(6 App. Div. 121.)

FLINT v. CHARMAN et al.

(Supreme Court, Appellate Division, Second Department.   June 9, 1896.)

COVENANTS—RESTRICTING USE OF LAND—INJUNCTION.

In an action to enjoin the use as a hotel of a building on defendant's lot in violation of a covenant that the premises should not be used "for any business purposes whatsoever," to which the adjoining premises of plaintiff and defendant were subject, it appeared that defendant constructed the hotel immediately after the purchase of her lot. Plaintiff did not personally occupy the lot adjoining defendants, but leased it, and resided on another lot acquired from the same grantor, and subject to the same covenant. Defendant testified without contradiction that plaintiff was present when the hotel was being built, and never made any objection, and expressed himself as pleased with what was going on. The lessee of plaintiff's lot made affidavit that the proximity of the hotel was an inducement to him. *Held*, that an injunction would not be granted.

Appeal from special term, Westchester county.

Action by Frederick W. Flint against May Charman and others for an injunction. From two orders enjoining defendants from using their premises for certain purposes, defendants appeal. Affirmed in part and reversed in part.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Everett P. Wheeler, for appellants.

H. T. Dykman, for respondent.

BROWN, P. J.   The parties to this action own adjoining property in the town of Mamaroneck, Westchester county, which was originally a part of a large tract of land owned by the Larchmont Manor Company, and by that corporation laid out in plots and sold for residential purposes.   The plaintiff built a cottage upon his lands in the spring and summer of 1894.   The defendant purchased her land in February, 1895.   The conveyance to neither party was from the Manor Company, but from its grantees.   Immediately after her purchase the defendant caused to be erected on her lots a four-story frame building 150 feet long, which she used and occupied during the summer of 1895 as a hotel, and which at the time of the commencement of this action she was preparing to open and use as a hotel during the summer season of the present year.   The orders appealed from enjoin and restrain the defendant from using her property for "any business purpose whatsoever, and particularly for the purpose of a hotel, boarding house, barroom, liquor store, or for the sale or disposal of liquor."   These orders have their support in a covenant inserted in all the deeds from the Manor Company, whereby each grantee of said company covenanted with it and its successors or assigns that the premises conveyed should not be used or occupied for the erection or maintenance of any slaughterhouse, or any of a number of other specified trades, including a barroom, lager beer saloon, restaurant, ale house, liquor saloon, "or any erection known as nuisances, or any noxious or dangerous use, purpose, trade, business, or establishment, or for any business purpose whatsoever"; and it was expressly declared

in the deeds from the Manor Company to its grantees that this said covenant should run with the land, and be inserted in all future conveyances and other instruments whereby the title to the said land was transferred or affected. The defendant, by her answer in the action, admits she purchased her property for the purpose of maintaining and using the same and the buildings thereon for a private hotel or boarding house, and that she used the same for such purpose during the year 1895, and intends to so use it in the future. She admits that she sold liquor to the guests at said hotel, but denies that she used the premises for a restaurant or barroom. These admissions clearly bring the case within the letter of the covenant, and establish a prima facie breach thereof. But, notwithstanding these admissions, we are of the opinion, for reasons now to be stated, that the orders, so far as they restrain the defendant from using the premises for the business of keeping a hotel or boarding house, must be reversed. It appears that the plaintiff erected his cottage in the summer of 1894. He has resided for several years in a cottage on another part of the Manor tract, and does not personally occupy the premises adjoining the defendant. It does not appear that the value of his property was depreciated by the defendant's hotel during the year 1895. On the contrary, the defendant swears, and the statement is not contradicted, that the plaintiff knew of her intention to use her property for hotel purposes, and never made any objection to her so doing; that he was present in the building before its completion, and was there on several occasions during the summer of 1895; that he was there on the occasion of a yachtmen's ball in August, and talked with defendant, and was apparently pleased and interested in what was going on, and that subsequently he offered to sell his cottage to the defendant, to be used as an annex to the hotel. In the early part of the present year he leased the cottage to Mr. W. B. Manney, who swore in an affidavit read upon the motion that the proximity of the cottage to the hotel was an inducement to him to hire it. The Code of Civil Procedure provides (section 603) that in an action of this character, where the right to an injunction depends on the nature of the complaint, an injunction pendente lite may be granted where it appears that the continuance of the act complained of during the pendency of the action would "produce injury to the plaintiff." It is very clear from the facts that I have stated that the plaintiff is not injured by the defendant's hotel. So far as we can be permitted to draw inferences from the facts he has been benefited by it. To some extent, at least, it has aided in procuring him a tenant for his own property. Being a resident upon another part of the tract, and offering to sell to the defendant the property adjoining her hotel, to be used in connection therewith, is certainly susceptible of the inference of a consent to the use by the defendant of the property for such purpose; and, if that be a violation of the covenant, it does not lie with the plaintiff to complain of an act which he was thus willing to aid and participate in. Suppose he had sold the cottage to the defendant to be used as an annex to the hotel, could he, as an owner of a lot on another part

of the tract, after such an act, successfully maintain an action to restrain such use? It appears to us that he could not, and, in face of the uncontradicted testimony to which I have referred, we think that he did not make out a proper case for a temporary injunction. Power v. Village of Athens, 19 Hun, 165; Bronk v. Riley, 50 Hun, 489, 3 N. Y. Supp. 446.

But there is another serious question presented upon the papers before us. The rule is well settled that a person who seeks to enforce a covenant of the character invoked by the plaintiff must permit no such breach of the stipulation as will frustrate all the benefit that would otherwise accrue to the other parties to the agreement. Moore v. Murphy, 89 Hun, 175, 34 N. Y. Supp. 1130. Long acquiescence in a state of things which he afterwards seeks to enjoin will prevent him from obtaining the desired relief. In re Lord, 78 N. Y. 109; Great Western R. Co. v. Oxford, W. & W. R. Co., 3 De Gex, M. & G. 341; Peek v. Matthews, L. R. 3 Eq. 515; Roper v. Williams, Turn. & R. 18, 22, 23. In Great Western R. Co. v. Oxford, W. & W. R. Co., supra, Lord Turner said:

"Parties who have lain by and permitted a large expenditure to be made, in contravention of the rights for which they contend, cannot call upon this court for its summary interference. The jurisdiction to interfere is purely equitable, and it must be governed by equitable principles. One of the first of these principles is that parties coming into equity must do equity. If parties cannot come into equity without submitting to do equity, a fortiori they cannot come for the summary interference of the court when their conduct before coming has been such as to prevent equity being done."

This rule will commend itself to the judgment of all fair-minded persons. Why should a court of equity interfere to enforce a covenant in favor of a man who, with knowledge that it was being violated, had failed to utter the remonstrance that would in all probability have given him the protection he asks, and have saved the other party from the expenditure of large sums of money? Where a man neglects to speak to protect his own rights, a court of equity is not bound to aid him to escape from the situation that his silence has aided in creating. It will, under such circumstances, ordinarily leave him to pursue his legal remedy, and recover such pecuniary damages as he may be able to show in a court of law that he has suffered. In this case it appears that the Manor Company laid out its tract of land and began the sale of the property, subject to the restrictions of the covenant, in 1873. Since that date there have been kept and maintained upon the property at least four hotels or boarding houses. One, at least, of these was with the express consent of the Manor Company, and all existed without complaint, so far as the motion papers inform us, of any resident on the tract. A horse railroad was constructed and operated upon one of the streets from the railroad station to the Sound. A livery stable was kept and maintained upon one of the plots with the express consent of the Manor Company, and not only without the dissent of any, but was patronized by many, of the residents. During the year 1894 the defendant kept and maintained a boarding house almost directly opposite her present hotel, and during the year 1895, as has already been stated, kept

the Victoria Hotel, with the knowledge and apparent approbation of the plaintiff and other residents on the tract.    It was apparent to every one during the process of the construction of the building by the defendant that it was not to be a private residence, but was to be used as a hotel; and yet no one protested or complained until this action was commenced.    The learned judge who heard this case at special term says in his opinion that "it is proven that she [the defendant] built in defiance of notice from one of the resident owners on the tract."    The record before us fails to sustain that statement.    There is no affidavit which contains such an assertion. In addition to the boarding houses and horse railroad mentioned, there were also erected and maintained on the tract, without protest from any person, so far as the case informs us, bath houses and club houses.    We do not desire to be understood as deciding on this appeal that the facts herein referred to establish conclusively a defense to this action.    But we do decide that, standing uncontradicted and unexplained, as they do in the record before us, they would permit and sustain either one of two conclusions, viz.: (1) That the Manor Company and its grantees had practically construed the expression in the covenant, "any business purpose," to exclude the business of a boarding house or private hotel, or (2) that the Manor Company and its grantees had so slept upon their rights, and apparently acquiesced in repeated violations of the covenant, that they are not now entitled to invoke the equitable power of the court to enjoin an owner of property who has acted upon the assumption that the restrictions are no longer to be observed.

In considering the question whether the writ of injunction should be issued in a case of this kind, and under such circumstances as are here disclosed, the court cannot be unmindful of the great injury that will be caused to the defendant to be restrained from the intended use of her property.    And where it appears, as it does here, that the plaintiff has suffered no pecuniary loss, that others are and have been permitted for a long time to do the precise thing now complained of, and that the pecuniary loss to the defendant to flow from the enforcement of the covenant is to be great, the discretion of the court is well exercised in dismissing the bill, and leaving the plaintiff to pursue his legal remedy.    It will be for the trial court, after hearing all the testimony, to draw the proper conclusion, and decide the question.    It is sufficient for us to say that a temporary injunction was improperly granted.    The orders, so far as they enjoin the defendant from the keeping of a boarding house or hotel, must be reversed, with $10 costs and disbursements to abide the event, and in other respects is affirmed.

Order so far as it enjoins the defendant from keeping a boarding house or hotel, is reversed; so far as it enjoins her from using her property for a barroom, liquor store, or for the sale or disposal of liquor, it is affirmed, with $10 costs to abide the event.    All concur.